# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES EACRET,
          Plaintiff,

     v.                                            Case No. 15-C-136

CAROLYN W. COLVIN,
**Acting Commissioner of the Social Security Administration**
          Defendant.

## DECISION AND ORDER

Plaintiff James Eacret seeks judicial review of the denial of his application for social security disability benefits. Plaintiff alleged that he could not maintain full-time employment due to fatigue and shortness of breath associated with his impairments of asthma, hypertension, sleep apnea, and gout. An Administrative Law Judge ("ALJ") agreed with him, awarding benefits, but the Appeals Council vacated that decision, remanding the case for rehearing before a different ALJ. The second judge denied plaintiff's application, and the Council refused to review the denial.

When the Council denies review, the court evaluates the ALJ's decision as the final word of the Commissioner. Engstrand v. Colvin, 788 F.3d 655, 660 (7th Cir. 2015). The court reviews the decision to ensure that it is supported by substantial evidence, applied the correct legal criteria, and contains an accurate and logical bridge from the evidence to the conclusion. See, e.g., Thomas v. Colvin, 745 F.3d 802, 806 (7th Cir. 2014); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005).

## I. FACTS AND BACKGROUND

From 2001 to 2006, plaintiff owned and managed a bar, which he sold when his breathing problems made it too difficult to continue. (Tr. at 40-41, 45, 79.) After that, he bartended part-time (generally less than 20 hours per week) at establishments owned by two friends. (Tr. at 40, 77-78, 367.) Plaintiff testified that his friends were pretty lenient with him, scheduling him for day shifts when the bar wasn't busy, limiting the amount he had to lift, and allowing him to sit as needed. (Tr. at 51-52, 83-84, 91.) The employers indicated in letters submitted to the agency that plaintiff still had difficulty performing his duties; one said she might have to replace him, the other that he became short of breath carrying a case of beer after only a short time. (Tr. at 426, 431.) Plaintiff testified that despite the accommodations he still missed one or two shifts per month due to exacerbations of symptoms. (Tr. at 52, 91.)

Plaintiff further supported his application with two reports from Dr. Lyle Weintraub, his primary physician. In the first report, Dr. Weintraub opined that plaintiff's symptoms would occasionally interfere with the attention and concentration needed to perform simple work tasks; that plaintiff was capable of low stress jobs; and that he could walk two blocks, sit for 45 minutes, and stand for one hour. (Tr. at 547.) Dr. Weintraub further opined that plaintiff required a job that allowed shifting positions at will from sitting to standing, unscheduled breaks every hour of five minutes duration, use of a cane during a gout flare, and no lifting beyond 10 pounds. (Tr. at 548.) Finally, Dr. Weintraub opined that plaintiff would have good and bad days and would miss about two days of work per month. (Tr. at 549.) In the second report, Dr. Weintraub indicated that plaintiff's symptoms would frequently interfere with attention and concentration; that plaintiff could

not work more than a six hour shift; and that he would miss about four days per month due to his impairments. (Tr. at 589-92.)

The agency denied plaintiff's application initially (Tr. at 108-09, 153), relying on the residual functional capacity ("RFC") assessment of Syd Foster, D.O., who reviewed the medical evidence and found plaintiff capable of light work with no concentrated exposure to hazards. (Tr. at 503-10.) Plaintiff requested reconsideration (Tr. at 157, 543-45), but the agency denied that request as well (Tr. at 110-11, 159), relying on the opinion of Pat Chan, M.D., who reviewed the record and concluded that plaintiff could perform light work with avoidance of even moderate exposure to dust and fumes (Tr. at 119-20).

Following a hearing, however, ALJ Thomas Sanzi found plaintiff disabled. ALJ Sanzi found plaintiff's statements regarding his symptoms and limitations credible, and adopted Dr. Weintraub's opinion over the opinions of the Drs. Foster and Chan, limiting plaintiff to a range of sedentary work. This RFC precluded plaintiff from performing his past work as a bartender and bar manager, and given his age, education, and work experience, qualified plaintiff as disabled under the agency's Medical-Vocational Guidelines. (Tr. at 138-45.)

The Appeals Council reviewed the matter on its own motion, vacating ALJ Sanzi's decision and remanding the matter for further proceedings. The Council found that ALJ Sanzi overlooked medical evidence inconsistent with the degree of limitation assessed in the decision, gave too much weight to Dr. Weintraub's opinions, and failed to consider indications in the record that plaintiff abused alcohol. (Tr. at 148-49.) The Council instructed the ALJ on remand to update the medical record, which may include a consultative exam or evidence from a medical expert; further evaluate plaintiff's

subjective complaints; and, if warranted, obtain supplemental evidence from a vocational expert. (Tr. at 150.)

On remand, the agency arranged for plaintiff to be examined by Kauseruzzaman Khan, M.D. (Tr. at 436, 626.) On respiratory exam, plaintiff's breath sound was clear to auscultation bilaterally, with no wheeze or crackles. On musculoskeletal exam, Dr. Khan found no joint swelling, tenderness or gross restriction of range of motion; bilateral big toes showed no swelling, redness, or restriction of range of motion, but plaintiff did have a tophus on his right big toe. On neurological exam, plaintiff showed no sensory deficit; normal tone, power, coordination, and reflexes; normal hand grip strength and no restriction to fine activity; and normal gait. However, Dr. Khan noted that he saw plaintiff in between asthma and gout attacks. (Tr. at 627.)

Dr. Khan completed a physical ability form based on his observations and plaintiff's history (Tr. at 628), opining that plaintiff could lift and carry up to 10 pounds frequently, 20 pounds occasionally; continuously sit for 30 minutes, stand for 30 minutes, and walk for 15 minutes. In an eight hour workday, plaintiff could sit for four hours, stand for four hours, and walk for one hour; and needed a cane to ambulate during a gout flare. (Tr. at 631-32.) Dr. Khan further opined that plaintiff could frequently use his hands for reaching, handling, fingering, and feeling, occasionally for pushing/pulling; and occasionally use his feet for operation of foot controls. (Tr. at 633.) Finally, Dr. Khan opined that plaintiff should avoid any exposure to unprotected heights, moving mechanical parts, and pulmonary irritants. (Tr. at 635.)

Plaintiff also submitted a pulmonary RFC questionnaire from Dr. Fouad Husnain. (Tr. at 642.) Dr. Husnain indicated that plaintiff's symptoms would frequently interfere

with the attention and concentration needed to perform even simple work tasks, and that plaintiff was capable of low stress jobs. (Tr. at 644.) He opined that plaintiff could walk two blocks without rest, continuously sit for two hours, and stand for one hour; in an eight hour day, plaintiff could sit and stand/walk about four hours. Plaintiff required hourly breaks of 10-15 minutes duration; could rarely lift 10 pounds, never more; occasionally twist, bend, and climb stairs; rarely squat; and never climb ladders. He had to avoid all exposure to cigarette smoke and even moderate exposure to extreme heat/cold, high humidity, perfumes, solvents/cleaners, fumes, dust, and chemicals. (Tr. at 644-46.) Finally, Dr. Husnain indicated that plaintiff would have good and bad days and likely miss about four days per month. (Tr. at 647.)

The case was on remand reassigned to ALJ Thomas Springer, who held a second hearing, summoning a vocational expert ("VE"). (Tr. at 32.) The VE classified plaintiff's past work as a bar manager as light, skilled work, and as a bartender as light, semi-skilled work. (Tr. at 60-61.) ALJ Springer then posed a hypothetical question, assuming a person of plaintiff's age, education, and work experience, able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about five hours collectively, and sit about six hours, so long as allowed to alternate between sitting and standing every 30 minutes. The person also had to avoid more than occasional exposure to extreme cold and fumes, dust, odors, gases, and poorly ventilated environments. (Tr. at 61.) The VE testified that these limitations would rule out the bartender job but would not "totally preclude" the bar manager position. (Tr. at 61-62.) The ALJ asked plaintiff how much time he spent on his feet when he owned a bar, and plaintiff indicated that it probably would not have exceeded four or five hours per day because he did not bartend all that

much. (Tr. at 62.) The VE subsequently testified that with a limitation of five hours standing and walking, the bar manager job could not be done as generally performed in the economy (Tr. at 63) but could be done as plaintiff performed it (Tr. at 67). However, adding a further limitation of occasional pushing and pulling with the upper and lower extremities would preclude the bar manager job, generally and as performed. (Tr. at 63, 67.)

ALJ Springer issued an unfavorable decision. (Tr. at 6.) Following the familiar five-step sequential evaluation process, see 20 C.F.R. § 404.1520, ALJ Springer concluded at step one that while plaintiff worked part-time he had not engaged in substantial gainful activity since the alleged onset date of June 1, 2011. (Tr. at 11.) At step two, the ALJ determined that plaintiff suffered from the severe impairments of asthma and gout. He found plaintiff's hypertension and alcohol abuse non-severe. (Tr. at 12.) At step three, the ALJ found that none of plaintiff's impairments met or equaled a Listing. (Tr. at 13.)

ALJ Springer next determined that plaintiff retained the RFC to perform less than the full range of light work, lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing/walking about five hours collectively and sitting about six hours, as long as he was allowed to alternate between sitting and standing every 30 minutes; and avoiding more than occasional exposure to extreme cold and fumes, dust, odors, gases, and poorly ventilated environments. (Tr. at 13.) In making this determination, the ALJ gave some weight to the opinions of the agency consultants, Drs. Foster and Chan, but giving plaintiff the full benefit of the doubt the ALJ found plaintiff more limited based on additional evidence received at the hearing level. The ALJ gave less than great weight

to the opinions from Drs. Husnain and Weintraub, noting that the record did not support many of their proposed limitations. (Tr. at 16-17.) The ALJ gave the most weight to the opinion of the consultative examiner, Dr. Khan, but he nevertheless rejected several of Dr. Khan's proposed limitations, including on pushing/pulling. The ALJ declined to include other limitations plaintiff alleged because he did not find plaintiff fully credible. (Tr. at 17.)

Relying on the VE's testimony, the ALJ found at step four that plaintiff could perform his past work as a bar manager, as actually performed. (Tr. at 18.) He therefore found plaintiff not disabled and denied the application. (Tr. at 18-19.)

## II. DISCUSSION

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence, evaluating credibility, and determining RFC at step four. I address each contention in turn.

**A.     Medical Opinions**

The ALJ must consider all medical opinions in the record. Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). Opinions from a social security claimant's treating physician are entitled to "special significance." SSR 96-8p, 1996 SSR LEXIS 5, at *20. Such opinions must be given "controlling weight" if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). If a treating source opinion does not meet the test for controlling weight, the ALJ must determine what value the opinion does merit, considering the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests

performed; and the consistency and supportability of the physician's opinion. Scott v. Astrue, 647 F.3d 734, 740 (7th Cir. 2011). The ALJ must always provide "good reasons" for discounting the opinion of a treating physician. Id. at 739.

The ALJ is also required to consider any opinions in the record from agency medical and psychological consultants, as they "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 SSR LEXIS 3, at *4. In weighing these opinions, the ALJ considers the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, any explanation for the opinion provided by the consultant, and any specialization of the consultant. Id. at *6. Generally, more weight is given to the opinion of a source who examined the claimant than to the opinion of a source who did not. 20 C.F.R. § 404.1527(c)(1).

Here, the ALJ purported to give the most weight to Dr. Khan's opinion, but he omitted from the RFC several of Dr. Khan's proposed restrictions, including the limitation to no more than occasional pushing and pulling (Tr. at 17), which the VE testified would preclude plaintiff's past work (Tr. at 67). The ALJ excluded this (and several other limitations) on the assumption that they were designed to accommodate potential restrictions during a gout flare, as plaintiff did not demonstrate need for those restrictions during the exam, which revealed no joint swelling, tenderness or gross restriction of range of motion; normal power, coordination, and reflexes; no abnormalities in handgrip strength or pinch grip strength; and normal gait, without a limp. The ALJ further explained that, because plaintiff testified to a reduced number of gout flare-ups and the record contained no more than minimal evidence showing active flare-ups, he would not

include these proposed limitations in the RFC.  (Tr. at 17.)

In his report, Dr. Khan specifically related plaintiff's need for a cane to gout flares (Tr. at 632), but he did not similarly attribute to gout the other limitations the ALJ omitted. See, e.g., Moss v. Astrue, 555 F.3d 556, 560-61 (7th Cir. 2009) (noting that the ALJ may not rely on speculation or conjecture to reject a medical source opinion); Blakes ex. rel. Wolfe v. Barnhart, 331 F.3d 565, 570 (7th Cir. 2003) (indicating that the ALJ must base his decision on the record, not a hunch); see also Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (holding that ALJs must not succumb to the temptation to "play doctor" and make their own independent medical findings).  More importantly, even if Dr. Khan did intend to relate these additional limitations to gout flares, the ALJ made no finding as to how often plaintiff experienced such flares.  That the number of flares may have declined does not mean they had stopped.  Indeed, at the hearing before ALJ Springer, plaintiff testified that he had problems with gout every week and a half, which caused him to miss one or two work shifts per month.  (Tr. at 51-52.)  Such absenteeism would not, the VE testified, be acceptable to employers on a continuing basis.  (Tr. at 64.)

The ALJ stated that he gave "less than great weight" to the opinions of Drs. Husnain and Weintraub, but he never explained what weight their opinions did deserve under the regulatory factors.  Further, the reasons the ALJ gave for rejecting the portions of these reports he did discuss are problematic.  For example, the ALJ found that the record contained no support for the opinion that plaintiff should be limited to low stress work, as treating sources consistently described plaintiff as alert and oriented, and they did not identify deficits in his cognitive functioning or note that he presents as persistently fatigued.  (Tr. at 16.)  However, Drs. Husnain and Weintraub did not relate the stress

limitation to alertness, cognitive functioning, or fatigue. See Moon v. Colvin, 763 F.3d 718, 722 (7th Cir. 2014) (stating that ALJs should rely on expert opinions instead of determining the significance of particular medical findings themselves). The ALJ rejected the treating doctors' 10-pound lifting restriction because, at the consultative exam, Dr. Khan found no joint swelling, tenderness, or gross restriction of range of motion, and normal tone, power, coordination, and reflexes. (Tr. at 16.) Dr. Weintraub treated plaintiff for asthma, hypertension, and gout (Tr. at 546) and Dr. Husnain for sleep apnea and asthma (Tr. at 643), and the ALJ did not explain how Dr. Khan's later musculoskeletal and neurological exams undercut the treating doctors' lifting restriction.

The ALJ further found that the record contained no objective evidence supporting the doctors' opinions that plaintiff would likely miss two to four days of work per month. The ALJ suspected that this limitation was instead based on plaintiff's subjective statements regarding his level of functioning, noting that in March 2012 and July 2012 plaintiff advised Dr. Weintraub of his capabilities and the number of days of work that he would likely miss each month. (Tr. at 17, citing Tr. at 557, 606.) While medical opinions should amount to more than a mere recitation of the claimant's subjective complaints, Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004), doctors are allowed to consider their patients' statements in formulating an opinion, see, e.g., Guerin v. Colvin, No. 13 C 6964, 2015 U.S. Dist. LEXIS 138948, at *25-26 (N.D. Ill. Oct. 13, 2015); Samuel v. Barnhart, 295 F. Supp. 2d 926, 950 (E.D. Wis. 2003). There is no indication here that the doctors' based their opinions solely on plaintiff's say-so. More importantly, this would be a proper basis for rejecting the doctors' opinions only if plaintiff exaggerated his limitations. As discussed below, the ALJ's credibility determination also suffers from flaws that must be

corrected on remand.[1]

The Commissioner correctly notes that an ALJ need not adopt a doctor's opinion verbatim. But this does not mean the ALJ may read such reports selectively, adopting the portions that support the RFC while rejecting without inadequate explanation those that do not. See, e.g., Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009). The matter must be remanded for reconsideration of these opinions.

**B.  Credibility**

In evaluating the credibility of a claimant's statements about his symptoms and limitations, the ALJ must follow a two-step procedure. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment or impairments that could reasonably be expected to produce the claimant's symptoms. If not, the alleged symptoms cannot be found to affect the claimant's ability to work. SSR 96-7p, 1996 SSR LEXIS 4, at *5.

Second, if the claimant does have such an impairment, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's ability to work. Id. at *5-6. At this second step, the ALJ may not discount a claimant's statements just because they are unsupported by significant physical and diagnostic examination results. Pierce v. Colvin, 739 F.3d 1046, 1049-50 (7th Cir. 2014). Rather, the ALJ must make a credibility finding based on the entire record, considering the claimant's daily activities; the location, duration, frequency,

---

1 Plaintiff notes that the non-examining state agency consultants, Drs. Chan and Foster, both found his statements consistent with the objective medical evidence and therefore credible. (Tr. at 118, 510.) Although credibility is an issue for the ALJ rather than a doctor, a doctor's opinion that the objective evidence supports the claimant's statements should not be ignored. Dr. Foster also appeared to accept plaintiff's claim that he needed to use a cane during gout flares. (Tr. at 510.) The ALJ must on remand account for plaintiff's need for a cane during such flares. See SSR 96-9p, 1996 SSR LEXIS 6, at *19-20.

and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; other treatment or measures the claimant receives or uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. SSR 96-7p, 1996 SSR LEXIS 4, at *8.

In the present case, the ALJ stated:

> The undersigned acknowledges that not all of the claimant's alleged symptoms and limitations have been accommodated to the extent that they would be inconsistent with the above residual functional capacity. This is so because, after considering the factors in SSR 96-7p, the undersigned finds that the claimant is not fully credible. The claimant's reported daily activities, including his ability to work part-time as a bartender, fail to demonstrate greater limitations than determined by the undersigned. The undersigned notes that the claimant was not always forthcoming with his treating sources, including Dr. Weintraub, regarding his alcohol use. There was no evidence of any limitation at the hearing. Moreover, the objective evidence does not provide strong support for the extent of symptoms and limitations described by the claimant.
>
> In sum, the above residual functional capacity assessment is supported by the evidence of record including the clinical evidence. In reaching this determination, the claimant's subjective complaints have been taken into account, both individually and in combination. While certain functional limitations have been assessed, the undersigned does not find the allegations regarding the severity or frequency of his symptoms to be fully credible or supportive of any greater limitations or restrictions than those included in the residual functional capacity set forth in this decision.

(Tr. at 17-18, internal record citations omitted.)

The biggest problem with this assessment is that it backwardly implies that the ability to work should be determined first, based on the "objective" evidence, with the "subjective" testimony then compared to that determination. See <u>Shauger v. Astrue</u>, 675 F.3d 690, 696 (7th Cir. 2012). As the Seventh Circuit has noted, if the ALJ first finds the claimant capable of full-time work based on the medical evidence, he will naturally brush

aside the claimant's testimony suggesting otherwise, rather than factoring that testimony into the RFC determination, as SSR 96-7p requires. See Goins v. Colvin, 764 F.3d 677, 681 (7th Cir. 2014). The ALJ also failed to follow the two-step process outlined above, first determining whether plaintiff suffered from impairments that could produce the symptoms alleged, then deciding whether the alleged symptoms are credible based on the record as a whole.[2] See, e.g., Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003) (holding that the ALJ must comply with the requirements of SSR 96-7p).

Looking past these procedural flaws, the substantive reasons the ALJ gave fail to withstand scrutiny, even under the deferential standard of review adopted by the Seventh Circuit. See, e.g., Carradine v. Barnhart, 360 F.3d 751, 753-54 (7th Cir. 2004). First, the ALJ noted plaintiff's activities, including his part-time work. While the ability to work, even part-time, is a permissible credibility factor, see Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008), the Seventh Circuit has also acknowledged that a person can be disabled despite working for an indulgent employer. Garcia v. Colvin, 741 F.3d 758, 760 (7th Cir. 2013). Here, plaintiff testified that his employers were friends of his and pretty lenient with what he did, scheduling him for light shifts, allowing him to sit as needed, and limiting his lifting to a 12-pack of beer.[3] (Tr. at 56-57, 83.) The ALJ pointed to no work duties that conflicted with plaintiff's claims about his capacity. More importantly, the ALJ failed to explain how this part-time employment (12 hours per week at the time of the second

---

2 As indicated above, the state agency consultants found plaintiff's statements credible based on the medical evidence.

3 Nevertheless, the employers indicated that plaintiff was having a hard time performing his duties, even on a modified, part-time schedule. (Tr. at 426, 431.) The ALJ stated that he considered their statements regarding plaintiff's deteriorating health and difficulties performing his bartending jobs in limiting plaintiff's sitting, standing, and walking. (Tr. at 17.) However, the ALJ did not consider these statements on the larger issue of whether plaintiff could maintain regular, full-time employment.

hearing, Tr. at 39) undercut plaintiff's claim that he lacked the stamina to maintain regular, full-time employment. As the Seventh Circuit has noted, "There is a significant difference between being able to work a few hours a week and having the capacity to work full time." Larson v. Astrue, 615 F.3d 744, 752 (7th Cir. 2010) (citing SSR 96-8p, 1996 SSR LEXIS 5, at *2). Part-time work for a friend who tolerates breaks and absences an ordinary employer would find unacceptable does not contradict a claim of disability. Id.

Second, the ALJ noted that plaintiff was not forthcoming with treating providers regarding the extent of his alcohol consumption. While this lack of forthrightness might in the abstract diminish plaintiff's credibility, the ALJ failed to explain how plaintiff's minimization of his drinking meant he was overstating the severity of his functional limitations. Earlier in his decision, the ALJ found that plaintiff's alcohol use caused no more than mild restriction of his activities (Tr. at 12), so it is hard to see how plaintiff's statements about his drinking amount to all that much.

Third, the ALJ indicated that he saw no evidence of limitation at the hearing. While ALJs may consider their own observations in evaluating credibility, see Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000), ALJ Springer did not explain what he observed and how it impacted plaintiff's credibility. It is also unclear what the ALJ expected see in a claimant suffering from asthma and gout (neither in active flare) during a less than one-hour proceeding. (Tr. at 34, 70.)

Finally, the ALJ stated that the objective evidence did not provide strong support for plaintiff's claims. As indicated, that is not required once the claimant produces evidence of a medical impairment that could produce the symptoms. See, e.g., Moore v.

Colvin, 743 F.3d 1118, 1125 (7th Cir. 2014).

Therefore, the matter must also be remanded for reconsideration of plaintiff's credibility. The ALJ should on remand also consider the observations of the SSA employees, who noticed discomfort and shortness of breath, while helping plaintiff complete paperwork. (Tr. at 378, 403.) See SSR 96-7p, 1996 SSR LEXIS 4, at *14 ("The adjudicator must also consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone.").

**C.     RFC/Step Four**

RFC is an assessment of the claimant's ability to do sustained work activities on a regular and continuing basis, i.e., eight hours per day for five days per week or an equivalent work schedule. SSR 96-8p, 1996 SSR LEXIS 5, at *1. In making this determination, the ALJ must perform a function-by-function assessment of the claimant's capacities before expressing RFC in terms of the exertional categories of sedentary, light, medium, or heavy work. This is so because the first consideration at step four is whether the person can perform past work as he actually performed it. Id. at *8. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, including regarding the claimant's ability to perform sustained work activities on a regular and continuing basis. Id. at *19.

Here, the ALJ found that:

the claimant has the residual functional capacity to perform less than the full range of light work[.] He can lift and carry twenty pounds occasionally and ten pounds frequently. He can stand and walk about five hours collectively and sit about six hours so long as he is allowed to alternate between sitting and standing every thirty minutes. He should avoid more than occasional

exposure to extreme cold and fumes, dust, odors, gases, and poorly ventilated environments.

(Tr. at 13.)

Missing from this assessment is a discussion of plaintiff's ability to maintain full-time work. Perhaps such a finding could be implied in some cases, but not so here, where plaintiff's primary contention was that fatigue and shortness of breath limited him to part-time work.[4]

Plaintiff further argues that the ALJ erred in relying on the VE's testimony, which conflicted with the Dictionary of Occupational Titles ("DOT"). As indicated above, the ALJ asked the VE a hypothetical question including the limitations from the RFC. (Tr. at 61.) The VE responded: "I'm not sure that [RFC] would totally preclude being the owner of a bar." (Tr. at 62; see also Tr. at 65: "it's really a borderline situation here.") The VE's hesitation stemmed from the fact that "bar owner/manager" is a light job, which generally requires a person be able to stand/walk at least six hours per day, see SSR 83-10, 1983 SSR LEXIS 30, at *14, while the hypothetical limited the person to five hours. (Tr. at 60, 65.) After the ALJ confirmed how much time plaintiff spent on his feet when he owned the bar – plaintiff said four or five hours (Tr. at 62) – the VE testified that the hypothetical person could do this job as plaintiff performed it. (Tr. at 67.) The VE acknowledged that, under the DOT, a person must be able to stand and walk six hours per day for light work. (Tr. at 66.) Asked by the ALJ if his testimony was consistent with the DOT in other respects, the VE said that it was, aside from his testimony about absences and off-task behavior, which are not addressed in the DOT. (Tr. at 64.) The VE failed to

---

4 The Commissioner waived response to this argument in her brief.

acknowledge that the sit/stand option included in the hypothetical is not addressed in the DOT either. See Zblewski v. Astrue, 302 Fed. Appx. 488, 494 (7th Cir. 2008) (citing SSR 00-4p).

However, as the Commissioner notes (and plaintiff concedes), plaintiff's counsel did not raise the issue; therefore, remand is required only if the conflict between the testimony and the DOT is "apparent." See Overman v. Astrue, 546 F.3d 456, 463-64 (7th Cir. 2008). In Zblewski, the Seventh Circuit found that because the DOT does not address sit/stand options, the conflict was not apparent. 302 Fed. Appx. at 494. Plaintiff cites Peterson v. Chater, 96 F.3d 1015, 1016 (7th Cir. 1996), where the court found an irreconcilable conflict between a finding that the claimant could perform sedentary to light exertional work and a finding that he could not do prolonged sitting, standing, and walking. In Peterson, the ALJ denied the claim based on the Grid, and the court remanded so the ALJ could obtain testimony from a vocational expert as to the impact of the sit/stand option. Id. at 1016-17. In the present case, the ALJ relied on a VE, who presumably accounted for the sit/stand option in finding plaintiff able to return to past work as performed. See Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) (indicating that the ALJ should obtain VE testimony regarding the number of light jobs with a sit/stand option). Nevertheless, because the matter must be remanded for other reasons, the ALJ should address this issue as well.

The ALJ should also more clearly define the requirements of plaintiff's past work and then assess, in light of the entire record, plaintiff's ability to perform those tasks. See Nolen v. Sullivan, 939 F.2d 516, 518 (7th Cir. 1991). The questioning of the VE on this issue was less than clear. The VE initially expressed reluctance to find plaintiff capable

of past work (Tr. at 62), but then, after further questioning of plaintiff by the ALJ (Tr. at 62) and a confusing series of questions and interruptions from plaintiff's counsel and the ALJ, the VE testified that plaintiff could, under the first hypothetical, do the past job as performed (Tr. at 67). Given plaintiff's age and exertional capacity, the step four determination is likely conclusive in this case. The ALJ must on remand develop a better record.

### III. CONCLUSION

Plaintiff seeks remand for an award of benefits. However, that remedy is appropriate only if all factual issues have been resolved and the record supports a finding of disability. Allord v. Astrue, 631 F.3d 411, 417 (7th Cir. 2011). Here, the matter must be remanded so the ALJ can reconsider the medical opinions and plaintiff's credibility, and clarify the RFC/step four determination.

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and this matter is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of November, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge